# CHARLESTON.

## LONG *v*. PERINE.

Submitted June 18, 1895—Decided Nov. 29, 1895.

1. WRITTEN CONTRACT—PAROL EVIDENCE.

     A writing being the repository of the true final agreement of the parties to it, and the highest and safest evidence of it, in the absence of fraud or mistake, oral evidence of prior or contemporaneous conversations or stipulations will not be admitted, to incorporate them in it, so as to add to, alter, or contradict the agreement spoken by the writing.

2. WRITTEN CONTRACT—PAROL EVIDENCE.

     Where there is no ambiguity in a written contract, oral evidence is not admissible to explain it, as it speaks for itself.

3. LIEN FOR PURCHASE MONEY—CONVENTION OF LIENORS.

     In a suit to enforce a purchase-money lien on land, no convention of the lienors of the debtor is necessary.

LIEN FOR PURCHASE MONEY—SALE FOR PURCHASE MONEY—NOTES FOR PURCHASE MONEY.

     In a suit to enforce the lien for one of several notes for purchase money of land, it is not error to decree a sale for it, without provision for other notes held by the plaintiff, not matured when the suit began, as this may be done in a further decree.

5. SALE ON COURT DAY.

A decree of sale omits to provide for a sale on a court day. This is not error.

6. EQUITY PLEADING—GENERAL REPLICATION—DEPOSITIONS.

Where there is an answer calling for a special reply, and there is a general replication to it, and the party filing it has gone on and taken depositions as if there were a special reply denying it, and there has been a full hearing of the merits, as if there had been such special reply, a decree will not be reversed for want of such special reply.

7. COSTS—ERROR.

Where there is no error but one of costs, this Court will not reverse the decree.

8. EXCEPTIONS—DEPOSITIONS.

When particular grounds of exception to a deposition are specified in written exceptions filed in the circuit court, other grounds can not be made for the first time in the appellate court, except for incompetency.

9. EXCEPTIONS—DEPOSITIONS—INCOMPETENCY OF WITNESS.

Exceptions to depositions, except for incompetency, must specify the grounds of exception, and not be only general, and must be called to the attention of the circuit court, else they will not be considered in this Court. Objection for incompetency of a witness may be made for the first time in this Court.

L. M. LaFollette and A. L. Taylor for appellant, cited Wald's Pollock on Contracts, pp. 498, 499, 500, 506; 61 Ia. 269; 12 Gratt. 98; 63 N. Y. 280; 67 Mich. 580; Clark on Contracts, pp. 774-5; 19 W. Va. 167; 6 W. Va. 249; 27 W. Va. 1; 11 W. Va. 300, 146; 26 W. Va. 791; 13 W. Va. 440; 23 W. Va. 558; Code, c. 125, ss. 35, 36; 35 W. Va. 634; 6 W. Va. 168.

John H. Holt for appellee.

BRANNON, JUDGE:

Long brought a suit in chancery in the Circuit Court of Taylor county to enforce a lien for purchase money upon a tract of land sold by him to Perine, obtained a decree of sale, and Perine appeals.

One of Perine's defenses is that his purchase, for one consideration, included a tract of land, and also the right to take from an orchard on an adjoining tract of land of Pixler one-third of its fruit, until the young orchard on

the land purchased by him should come to bear fruit, which right Long represented himself to have. Such was the talk in the negotiation, or, say, the agreement. The parties went to a scrivener to have the contract written, and the writing attests the sale of the land, but is silent as to this right to fruit. Part of the purchase money was paid then, and about two weeks later the deed was written by the same scrivener, the balance of the cash payment paid, and notes for deferred payments were made by the purchaser. This deed is silent as to any right to the fruit.

Were it the case that the omission to transfer the right to take fruit was a mistake of the scrivener, or an unintentional or fraudulent omission, we would have a different question from that which we in fact have. But the evidence of Perine himself, and other evidence, shows that, when the writing was about to be drawn, Perine mentioned this right to fruit, and wished it inserted; but the scrivener said it would make the writing cumbersome, and was not a proper thing to go into it, but ought to be the subject of another contract. It was thus agreed to omit it knowingly and intentionally. So, too, it was left out of the deed. Now, a writing is the repository and reflex of the true agreement, as finally made, in the absence of fraud or mistake, and the safest and highest evidence of that agreement; and oral evidence of prior or contemporaneous conversation, declarations, or stipulations will not be admitted to incorporate them in or ingraft them upon the writing, so as to add to, alter, or contradict the agreement spoken by the writing. *Lockwood* v. *Holliday*, 16 W. Va. 651; *Hukill* v. *Guffey*, 37 W. Va. 425 (16 S. E. 544); *Towner* v. *Lucas*, 13 Gratt. 705.

Here are two instruments, without ambiguity, which say that for a certain sum of money, Long sold Perine a specific tract of land. The proposition is to call in oral evidence to prove that for that sum Long did not sell only the land, but also a right to take fruit; thus altering and varying the writing, and making a different contract, contradicting the writing, as it says Long, for a fixed consideration, sold only a farm, whereas the writing, if so modified, would say that he sold him the farm, and a right to take

fruit from another farm. If the writing were ambiguous, oral evidence, under certain restrictions, might be adduced to make it speak what it was the intention it should speak; but as to what was sold for a given price the writing is without ambiguity, and oral evidence can not be called upon for purposes of construction *Hurst* v. *Hurst*, 7 W. Va. 289, pt. 5; *McGuire* v. *Weight*, 18 W. Va. 507; *Crislip* v. *Cain*, 19 W. Va. 441, pt. 19. But, even if ambiguous, declarations of the parties before, at, or after the execution of the contract can not be admitted, even for construction. Therefore the evidence to add the fruit right to the contract was not admissible. According to the evidence—according to Perine himself—this fruit license was left out of the writing, and made then, at the drafting of the writing, an independent or new contract. What may be his right under it, we do not say. But I do not regard this right to fruit as really a part of the contract of land sale. Perine, it is true, did not want to buy land with an orchard not yet fruit bearing, and was told that this need not be an objection, as Long had the privilege of getting fruit from the land of his father-in-law, Pixler, and that Perine could exercise the same privilege until his own orchard would bear fruit. It was a mere license to take fruit on another's land. Perine knew the orchard did not belong to Long. Take all the evidence of the circumstances and nature of the transaction, and we must conclude that this license was only such; not entering at all, as a substantial element, into the contract, or as a factor in the purchase money—a mere license collateral to the land sale. Long's version, under oath, is that it was no part of the land sale. And Perine never was debarred from its exercise. It was his own fault that he did not use it. Both Long and Pixler were willing that he should. Pixler was careful to send him word to come and get fruit as Long had been doing, but Perine refused, with the sinister purpose of claiming damages from Long. He so declared, as is shown by disinterested testimony. He wished to use it as a defense, and to cut down the purchase money. He tried in vain to negotiate a loan of a loan association, telling people that he wanted it to pay this very purchase money, never set-

ting up to them any objection on the score of this fruit matter, but, when he could not effect the loan, he concluded to use it as a defense to gain time; and all the time the door was open to him to get fruit, as he well knew, whenever the trees bore it. He insisted on a deed to show this fruit right, which was never denied. He seems to lay blame at Long's door for refusing to release his lien, to give the loan association a lien; but as the proposition was to give that association a first lien, and make Long's deferred notes a second lien, Long can not be criticised for this.

Another plea set up by Perine is that a lien for purchase money, constituting a prior lien on the land, was unpaid. Markham, its owner, had released this lien; but as he had sold one note to Cather, and another to Cole, it was claimed this release was ineffectual. But pending the suit Cather and Cole were paid, and released their lien; so that it could only enter into a question of costs in the circuit court, and we would not reverse for costs merely. *Prichard* v. *Evans*, 31 W. Va. 137 (5 S. E. 461). And Perine had more than enough purchase money in his hands besides the note sued on, to indemnify him.

If it is meant in the brief of counsel, as it seems to be, that there should have been a convention of lienors, the reply is, it is not necessary in suits to enforce purchase money liens, as in suits on judgment. *Cunningham* v. *Hedrick*, 23 W. Va. 579; *Hull* v. *Hull*, 26 W. Va. 17; *Armentrout* v. *Gibbons*, 30 Gratt. 633.

It is objected that the decree is for only one of the notes, leaving others not at all provided for. When the suit was brought, one only was due, and another had fallen due at the date of the decree; and, as the bill stated the amounts and maturity of all the installments, the decree might have provided, as is usually done, for the payment of the second note, and reserved to plaintiff the right to ask provision in future for installments not yet due. But this omission does not prejudice defendant, but is easier on him, as it does not require him to pay the second note so soon. As the case is never ended until all the matters of the bill are disposed of, these things can be provided for hereafter, and there is no error in this.

The brief of the counsel argues that it was error to omit from the decree a provision for the sale of the land on a court day. No statute or other authority for this is given. However usual to direct a sale on a court day, or however proper, the failure to do so is not error. Where the court directs the mode, time, place, and terms of sale, they must be adhered to. *Tulley* v. *Starke*, 6 Gratt. 339. But, if the decree does not fix the manner and time for sale, it is left to the sound discretion of the commissioner or officer making it. Ror. Jud. Sales, § 83: *Blossom* v. *Railroad Co.*, 3 Wall. 208.

Brief of counsel also contends that it was error to read depositions taken by Long after Perine's answer calling for affirmative relief, without special reply, as it ought to have been thus taken for true. Answers to this promptly occur. The answer is merely one of defense, not a cross bill calling for affirmative relief. *Foutty* v. *Poar*, 35 W. Va. 70 (12 S. E. 1096). I do not think a claim to have the whole contract executed or rescinded is such matter. But, at any rate, if in error here. after the answer was filed, with general acplication, the defendant took depositions as if there had been a reply, also did plaintiff, and there has been a full hearing on the merits, and for this irregularity we would not reverse. *Paxton* v. *Paxton*, 38 W. Va. 616 (18 S. E. 765). The defense could be and was made by the ordinary answer. If error, it was utterly harmless.

Another objection to reading certain depositions is that no legal notice was given to defendant, as the notice was not directed to any one. There is plainly no substance in this point. The notice gave very fully the caption of the case, naming George T. Long as plaintiff, and Wilson Perine defendant, and a copy was delivered to Perine. How could he possibly not understand it?

Another objection is that the depositions were taken so near term that defendant could not rebut them. When such is the case, a continuance ought to be asked. But this point is immaterial, as the depositions were taken 27th and 28th December, and at January term the case was not heard, but was heard on April 20th, next afterwards.

Another objection to reading the depositions—which

perhaps I ought not to consider, because, while specific grounds of exception were particularized in the exceptions, this one was not—is that the taking of the deposition was adjourned to the house of Long to take his deposition, owing to his illness, and the notice specified another place, and gave no intimation of adjournment to another place. Judge Roane in *Marshall* v. *Frisbie*, 1 Munf. 247; Bart. Ch. Prac. 747, thought a commissioner might, of his own mere authority, adjourn to another place when there is necessity. If the other party is present, he hears the adjournment, and if not he is not harmed; and if he went to the place designated in the notice, and failed to find the officer taking the depositions, he should show facts to show that in truth the adjournment to another place was a surprise upon him. And, if he wished to cross-examine, he could have asked the court for an order to do so. But, as said above, the fact that, while several grounds of exception to the depositions were given in the circuit court, this one was passed over, requires us to say that we can not consider it. Grounds of exceptions to depositions must be given in the exception, and not a mere general exception, except for incompetency. Bart. Ch. Prac. 753; Bart. Law Prac. 444; *Richardson* v. *Donehoe*, 16 W. Va. 685, pt. 8. Here it is worse than if no grounds of exception had been given, as certain ones were given, and this passed as if waived. An irregular adjournment, to be ground of exception, is like any other; it must be specified. Bart. Ch. Prac. 749, note 1. Exceptions to depositions, properly pointed, must be called to the attention of the court below, and can not for the first time be relied on in this Court, as they might be remedied if brought up there. *Linsey* v. *McGannon*, 9 W. Va 154; Bart. Ch. Prac. 748; 1 Bart. Law Prac. 439. This rule applies here, for this objection was not relied on in the circuit court. But objection for want of competency may be made without exception in either court. *Rose* v. *Brown*, 11 W. Va. 122.

Another objection is that the court gave thirty days to take the depositions, and they were not taken within that time. That limit was directory merely. The party had notice of the depositions. He had plentiful time in which

to meet them. Should a court make time so essential as to make the party forfeit for this cause his depositions? At any rate, if the court below refused to inflict this penalty, we ought not, seeing the party had ample time to meet the depositions, also warning by the court that they would be read, and that it would be necessary to meet them if he desired; for on 12th January the court overruled the exception, and the case was not heard till April 20th.

Seeing no error, we affirm the decree.